JS 44   (Rev 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Britney Grisso-Leahey

**(b)** County of Residence of First Listed Plaintiff   Camden
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Julie A. Uebler, Esq., Console Mattiacci Law, LLC, 110 Marter Ave., Ste 502, Moorestown, NJ 08057; 856-854-4000

## DEFENDANTS

Centers Health Care

County of Residence of First Listed Defendant   Atlantic
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U S Government Plaintiff
- [x] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 2  U S Government Defendant
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | **LABOR** | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | | | [ ] 751 Family and Medical Leave Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 862 Black Lung (923) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [x] 442 Employment | [ ] 510 Motions to Vacate Sentence | | | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | **FEDERAL TAX SUITS** | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer w/Disabilities - Employment | [ ] 535 Death Penalty | | [ ] 870 Taxes (U S  Plaintiff or Defendant) | |
| [ ] 290 All Other Real Property | [ ] 446 Amer w/Disabilities - Other | **Other:** | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 462 Naturalization Application | | |
| | | [ ] 550 Civil Rights | [ ] 465 Other Immigration Actions | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1  Original Proceeding
- [ ] 2  Removed from State Court
- [ ] 3  Remanded from Appellate Court
- [ ] 4  Reinstated or Reopened
- [ ] 5  Transferred from Another District Transfer
- [ ] 6  Multidistrict Litigation - Transfer
- [ ] 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. §12101, et seq. ("the ADA"), N.J.S.A. 10:5-1, et seq. ("the NJLAD")
Brief description of cause:
Plaintiff brings this claim against Defendant for disability discrimination.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
In excess of $75,000

CHECK YES only if demanded in complaint:
JURY DEMAND:  [x] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See Instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
3/8/2021

SIGNATURE OF ATTORNEY OF RECORD
*Julie A. Uebler*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG JUDGE _____

**IN THE UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| Britney Grisso-Leahey | : | CIVIL ACTION NO. |
| Waterford, NJ 08089 | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| Centers Health Care | : | JURY TRIAL DEMANDED |
| 43 N. White Horse Pike | : | |
| Hammonton, NJ 08037 | : | |
| Defendant. | : | |
| | : | |

## COMPLAINT

### I.  INTRODUCTION

Britney Grisso-Leahey was a dedicated and hardworking employee of Centers Health Care, a healthcare company specializing in rehabilitation and skilled nursing services for sick and elderly patients in Hammonton, New Jersey. During the early days of the COVID-19 pandemic, Ms. Grisso-Leahey, like millions of Americans, had to adjust to life while working at home. The pandemic had a negative impact on her mental health. She experienced symptoms related to her PTSD and depression, including debilitating fears about who would care for her three (3) children if she became ill from the virus or succumbed to it.

As the pandemic wore on, Centers Health Care experienced a COVID-19 outbreak in its Hammonton facility, and scores of its patients and personnel became infected with the virus – including some fatally. Thereafter, Centers Health Care attempted to force Ms. Grisso-Leahey and other non-clinical staff to physically return to work inside its facilities. Faced with the sudden reality of potentially contracting COVID-19, Ms. Grisso-Leahey's fears about the virus translated into immediate symptoms and a rapid worsening of her mental health conditions. So, Ms. Grisso-Leahey informed her supervisor that she had a disability and was seeking reasonable

accommodations to continue working from home. But her supervisor did not care. She callously dismissed her request, telling Ms. Grisso-Leahey "we all have families at home with children" and then fired her four days later. Centers Health Care fired Ms. Grisso-Leahey within days of her request to accommodate her disability without any discussion or inquiry and in a brazen violation of the law.

Plaintiff now brings claims pursuant to the Americans with Disabilities Act, as amended, 42 U.S.C. §12101, *et seq.* ("the ADA"); and the New Jersey Law Against Discrimination, as amended, N.J.S.A. 10:5-1, *et seq.* ("the NJLAD").  Plaintiff seeks damages, including without limitation: back-pay, front pay, compensatory, and punitive. Plaintiff also seeks costs and attorneys' fees and all other such relief that this Court deems appropriate under the statutes which form the basis of this matter.

## II. <u>PARTIES</u>

1.     Plaintiff, Britney Grisso-Leahey, is an individual and a citizen of the State of New Jersey. She resides in Waterford, New Jersey 08089.

2.     Defendant Centers Health Care is a fully integrated post-acute care healthcare company with corporate headquarters located at 4770 White Plains Road, Bronx, NY 10470.

3.     Defendant Centers Health Care maintains a principal place of business at 43 N. White Horse Pike, Hammonton, NJ 08037.

4.     Defendant Centers Health Care is engaged in an industry affecting interstate commerce and regularly does business in the State of New Jersey.

5.     At all times material hereto, Defendant employed more than fifteen (15) individuals.

2

6. At all times material hereto, Defendant Centers Health Care acted as an "employer" within the meaning of the statutes which form the basis of this matter.

7. At all times material hereto, Ms. Grisso-Leahey was an "employee" of Defendant within the meaning of the statutes which form the basis of this matter.

8. At all times material hereto, Defendant Centers Health Care acted by and through its authorized agents, servants, workers, and/or employees acting within the course and scope of their employment with Centers Health Care and in furtherance of its business.

## III.   JURISDICTION AND VENUE

9. The causes of action which form the basis of this matter arise under the ADA and the NJLAD.

10. The District Court has jurisdiction over Count I (ADA) pursuant to 42 U.S.C. §12117(a) and 28 U.S.C. §1331.

11. The District Court has supplemental jurisdiction over Count II (NJLAD) pursuant to 28 U.S.C. §1367.

12. Venue is proper in the District Court under 28 U.S.C. §1391(b) and 42 U.S.C. §2000e-5 because the actions complained of herein occurred within the jurisdictional limit of this Court.

13. On or about June 3, 2020, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), complaining of the acts of discrimination alleged herein.  Attached hereto and incorporated herein and marked as Exhibit "1" is a true and correct copy of the EEOC Charge of Discrimination (with personal identifying information redacted).

14.     On or about December 8, 2020, the EEOC issued to Plaintiff a Dismissal and Notice of Rights for Plaintiff's EEOC Charge.  Attached hereto and marked as Exhibit "2" is a true and correct copy of that notice (with personal identifying information redacted).

15.     Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

## IV.   FACTUAL ALLEGATIONS

16.     Ms. Grisso-Leahey is a professional in the medical sales industry with nearly a decade of relevant experience. She holds an associate degree in Radiographic Science and maintains her license in Radiology through the New Jersey Department of Environmental Protection.

17.     While working for a previous employer, Ms. Grisso-Leahey met and interacted with Nicole Montone, the Regional Director of Admissions and Marketing for Centers Health Care in New Jersey.

18.     Ms. Grisso-Leahey demonstrated her skills and competence in her work and was recruited by Ms. Montone to join her in working for Centers Health Care.

19.     Centers Health Care hired Ms. Grisso-Leahey as a Hospital Liaison in December 2018.

20.     In that role, Ms. Grisso-Leahey was tasked with developing relationships with discharge planners and agencies in her region so that they would direct patients and families to Ms. Grisso-Leahey, who would then "sell" them on Centers Health Care's facilities and programs. Ms. Grisso-Leahey was assigned to select hospitals in New Jersey, where she was expected to travel between them and market Centers Health Care's services.

21.     Prior to joining Centers Health Care, Ms. Grisso-Leahey was diagnosed with Posttraumatic Stress Disorder ("PTSD") and Major Depressive Disorder in 2018.

22.     PTSD is a physical or mental impairment that substantially limits one or major life activities; for Ms. Grisso-Leahey these include but are not limited to Ms. Grisso-Leahey's ability to care for herself and her children, sleep, breath, learn, read, concentrate, think, communicate, interact with others, and to work.

23.     Major Depressive Disorder ("depression") is a physical or mental impairment that substantially limits one or more major life activities; for Ms. Grisso-Leahey these include but are not limited to Ms. Grisso-Leahey's ability to care for herself and her children, sleep, breath, learn, read, concentrate, think, communicate, interact with others, and to work.

24.     She did not disclose these diagnoses during her hiring or early employment with Centers Health Care as they did not at that time impact her ability to work and, therefore, she did not believe any disclosure was necessary.

25.     Prior to March 2020, Ms. Grisso-Leahey's PTSD and depression symptoms were managed through medication and treatment.

26.     In March 2020, the United States experienced its first wave of lockdowns due to the COVID-19 pandemic.

27.     Health care and skilled nursing facilities for the elderly were especially hard-hit, as people in vulnerable populations such as those over age 65, individuals with pre-existing heart and lung conditions, and folks living in congregate settings were at greatest risk to contract the disease and experience the most acute symptoms.

28.     In late March 2020, New Jersey Governor Phil Murphy issued a series of Executive Orders in response to the COVID-19 pandemic, including closing or locking down

business deemed "non-essential" and directing that essential businesses such as health care facilities allow for their non-clinical staff to work remotely.

29.     Centers Health Care complied with the Governor's orders and its marketing and Hospital Liaison employees in New Jersey began working from home.

30.      Ms. Grisso-Leahey was among those employees instructed to work from home.

31.     The pandemic negatively impacted Ms. Grisso-Leahey's mental health. She started experiencing symptoms related to her PTSD and depression, such as panic attacks, anxiety attacks, insomnia, and difficulty breathing.

32.     Between March and May 2020, Ms. Grisso-Leahey experienced nightmares about the patients she was admitting to Centers Health Care facilities and what would become of them because of the virus, as well as debilitating fears about who would care for her three (3) teenage children if she became ill from the virus or succumbed to it.

33.     These impairments substantially limited Ms. Grisso-Leahey's ability to care for herself and her children, sleep, breath, learn, read, concentrate, think, communicate, interact with others, and to work.

34.     Ms. Grisso-Leahey believed that her anxiety and panic attacks were becoming too much for her to handle, so she consulted with her therapist who suggested increases in her medication.

35.     Despite the horrors of the pandemic and the personal challenges she faced due to her medical conditions, Ms. Grisso-Leahey performed well at work, exceeding her April 2020 admissions target by nearly double.

36.     Meanwhile, conditions within Centers Health Care's New Jersey facilities were decidedly not good. The facilities had sick residents and sick employees and they were

struggling to provide clinical care. By mid-May 2020, Centers Health Care's facility in Hammonton, NJ would experience 207 confirmed COVID-19 cases and at least 29 confirmed deaths due to COVID-19.

37.     On Wednesday, May 6, 2020, Ms. Montone sent an email to Centers Health Care's four (4) New Jersey-based Hospital Liaisons in which she advised the Liaisons that Defendant would require them to be physical present in its facilities on a rotating basis, even though the work they were expected to continue performing could be done remotely. Ms. Montone indicated that the Liaisons would need to begin rotating into the facilities despite the worsening COVID-19 outbreak in those same facilities.

38.     Ms. Grisso-Leahey was instructed to report to Centers' Hammonton, New Jersey facility later that week.

39.     Ms. Grisso-Leahey was aware of the COVID-19 outbreak within the Hammonton facility at the time of the May 6, 2020 email and was terrified by the prospect of contracting the virus. She became consumed by fears that she would contract the virus, succumb to it, and that her children would be left to fend for themselves. Faced with the sudden reality of potential COVID-19 exposure, Ms. Grisso-Leahey's terror translated into immediate symptoms and a rapid worsening of her mental health conditions. Her mental health status during this time was untenable as she was nearly unable to function.

40.     So, Ms. Grisso-Leahey responded to Ms. Montone soon after receiving the May 6, 2020 email and informed her that she was unable to put herself at risk given the numerous confirmed COVID-19 cases at the Hammonton facility. She was the sole provider for her three (3) children and was concerned for her safety and the health of her family. She further noted that she could reasonably perform the non-clinical administrative duties at home, stating that she was

"more than happy to assist with calls, but I will need them to be forwarded to my phone so that I can continue to perform my duties."

41.    Ms. Montone responded a short time later on May 6, 2020 by noting "we all have families with children" and that Ms. Grisso-Leahey was nonetheless expected to assume rotations at the Hammonton facility as instructed.

42.    Ms. Grisso-Leahey contacted her healthcare provider so she could submit medical support for her request for accommodation to work from home. In response, Ms. Grisso-Leahey's healthcare provider increased her medication and provided a note directing that Ms. Grisso-Leahey be permitted to work from home from May 7, 2020 through May 31, 2020.

43.    The May 7, 2020 doctor's note stated that Ms. Grisso-Leahey was "required to work from home from 5/7/2020 till 5/31/2020. [Ms. Grisso-Leahey is] currently being treated for exacerbation of chronic condition and med. treatment adjustment."

44.    Ms. Grisso-Leahey provided the note to Ms. Montone on Thursday, May 7, 2020.

45.    Ms. Montone acknowledged receipt of the note on May 7, 2020 when she responded "noted, thanks."

46.    Ms. Grisso-Leahey did not receive any other response from Ms. Montone or anyone else at Centers Health Care regarding her request for a reasonable accommodation in the form of continued work-from-home and call forwarding on May 7, 2020.

47.    On Monday, May 11, 2020, Ms. Grisso-Leahey received a call from Ms. Montone, Merrill Egerton, a Centers Health Care's employee within its Human Resources Department, and Eitan Nat, Centers Health Care site Administrator, informing her that her employment with Centers would be terminated effective May 12, 2020.

48.   Ms. Montone informed Ms. Grisso-Leahey that she was being terminated because the company needed to hire more essential personnel to be physically inside its facilities.

49.   Ms. Grisso-Leahey complained that she was terminated because she had provided a doctor's note seeking reasonable accommodations for her disability.

50.   Prior to informing Ms. Montone of her disability and prior to seeking reasonable accommodations for her disability, she had no indication that her job was in jeopardy.

51.   Ms. Grisso-Leahey had no performance or disciplinary issues throughout her employment with Centers Health Care.

52.   Ms. Grisso-Leahey had no option or opportunity to remain employed with Centers Health Care.

53.   To the best of her knowledge, information and belief, Ms. Grisso-Leahey was the only Hospital Liaison reporting to Ms. Montone who was terminated effective May 12, 2020.

54.   Centers Health Care retained all non-disabled, and/or employees who did not seek reasonable accommodations for a disability and/or employees Centers Health Care regarded as disabled in its New Jersey facilities.

55.   To the best of her knowledge, information and belief, Ms. Grisso-Leahey was replaced by a non-disabled individual and/or an individual not regarded by Centers Health Care as disabled.

56.   Defendant Centers Health Care terminated Plaintiff's employment because of her disability and/or because it regarded her as disabled and/or in retaliation for her request to accommodate her disability by working from home.

57.     Defendant Centers Health Care's stated reasons for terminating Ms. Grisso-Leahey's employment were just a pretext for disability discrimination and/or retaliation for her request to accommodate her disability by working from home.

58.     Defendant Centers Health Care's stated reason for Ms. Grisso-Leahey's termination is pre-textual.

59.     Ms. Grisso-Leahey has a disability as defined by the ADA in that she is diagnosed with PTSD and depression, conditions that substantially limit her major life activities, including, but not limited to, Ms. Grisso-Leahey's ability to care for herself and her children, sleep, breath, learn, read, concentrate, think, communicate, interact with others, and to work.

60.     Ms. Grisso-Leahey is a qualified individual as defined by the ADA as she possesses the requisite knowledge, skill, and experience to perform the essential functions of her position as Hospital Liaison with or without reasonable accommodation and that she did so throughout her employment with Defendant Centers Health Care.

61.     Ms. Grisso-Leahey's disability and Defendant Centers Health Care's regarding her as disabled, was a motivating and/or determinative factor in connection with Defendant Centers Health Care's discriminatory and retaliatory treatment of her.

62.     Ms. Grisso-Leahey made a request for a reasonable accommodation under the ADA in the form of asking that be allowed to continue working from home from May 7, 2020 through May 31, 2020, and that any phone calls to the Hammonton facility be forwarded to her phone. Ms. Grisso-Leahey's request for this accommodation was a motivating and/or determinative factor in Defendant Centers Health Care's discriminatory and retaliatory treatment of her.

63.     Ms. Grisso-Leahey proposed accommodation to continue working from home and to forward calls from the Hammonton facility to her phone was reasonable. Plaintiff's proposed accommodation did not impose an undue hardship on Defendant.

64.     Defendant Centers Health Care did not engage in any interactive process to determine whether it could reasonably accommodate Ms. Grisso-Leahey's request to continue working from home and to receive call forwarding from the Hammonton facility.

65.     Defendant Centers Health Care failed to provide Ms. Grisso-Leahey's requested accommodation or any other reasonable accommodation and instead terminated her employment within five days of learning of her disability/request for reasonable accommodations due to a disability and/or having regarded her as disabled.

66.     Defendant Centers Health Care failed to prevent or address the discriminatory and retaliatory conduct referred to herein and further failed to take corrective and remedial measures to make the workplace free of discriminatory and retaliatory conduct.

67.     As a direct and proximate result of Defendant Centers Health Care's discriminatory conduct, Ms. Grisso-Leahey has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

68.     Ms. Grisso-Leahey is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant Centers Health Care's discriminatory acts unless and until this Court grants the relief requested herein.

69.     Defendant Centers Health Care's conduct in terminating Ms. Grisso-Leahey was especially egregious conduct as it was carried out by its upper management employees.

70.     No previous application has been made for the relief requested herein.

## COUNT I – ADA

71.     Plaintiff incorporates the previous paragraphs above by reference, as if set forth herein in their entirety.

72.     By committing the foregoing acts of discrimination and retaliation against Ms. Grisso-Leahey, Defendant Centers Health Care violated the ADA.

73.     Defendant Centers Health Care acted intentionally, and with malice and/or reckless indifference to Ms. Grisso-Leahey's rights, and its conduct warrants the imposition of punitive damages.

74.     As a direct and proximate result of Defendant Centers Health Care's violation of the ADA, Ms. Grisso-Leahey has suffered the injuries, damages, and losses set forth herein.

75.     Ms. Grisso-Leahey is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant Centers Health Care's discriminatory acts unless and until this Court grants the relief requested herein.

76.     Ms. Grisso-Leahey is entitled to all costs and attorneys' fees incurred as a result of the unlawful behavior complained of herein.

77.     No previous application has been made for the relief requested herein.

## COUNT II –NJLAD

78.     Plaintiff incorporates the previous paragraphs above by reference, as if set forth herein in their entirety.

79.     Defendant Centers Health Care, by the above-described discriminatory acts, has violated the NJLAD.

80.     As a direct and proximate result of Defendant Centers Health Care's discriminatory conduct, Ms. Grisso-Leahey has sustained the injuries, damages, and losses set forth herein, and has incurred attorney's fees and costs.

81.     Ms. Grisso-Leahey is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant Centers Health Care's discriminatory and unlawful acts unless and until this Court grants the relief requested herein.

82.     No previous application has been made for the relief requested herein.

## RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendant:

a.     declaring the acts and practices complained of herein to be in violation of the ADA;

b.     declaring the acts and practices complained of herein to be in violation of the NJLAD;

c.     entering judgment against Defendant and in favor of Plaintiff in an amount to be determined;

d.     enjoining and restraining permanently the violations alleged herein;

e.     awarding compensatory damages to Plaintiff to make Plaintiff whole for all past and future lost earnings, benefits, and earning capacity, which Plaintiff has suffered and will continue to suffer as a result of Defendant's discriminatory and unlawful misconduct;

f.     awarding compensatory damages to Plaintiff for past and future emotional upset, mental anguish, humiliation, loss of life's pleasures, and pain and suffering;

g.     awarding Plaintiff costs of this action, together with reasonable attorney's fees; awarding punitive damages to Plaintiff;

h.      awarding Plaintiff such other damages as are appropriate under the ADA, and the NJLAD; and

i.      granting such other and further relief as this Court deems appropriate.

**CONSOLE MATTIACCI LAW, LLC**

Dated: March 8, 2021          BY: _____

Julie A. Uebler (255212017)
110 Marter Avenue, Suite 105
Moorestown, NJ 08057
Telephone: (856) 854-4000
Facsimile: (215) 565-2852
uebler@consolelaw.com

*Attorneys for Plaintiff Britney Grisso-Leahey*

14

Exhibit 1

| CHARGE OF DISCRIMINATION | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See privacy statement before consolidating this form. | Q   FEPA<br>X   EEOC | |

| STATE OR LOCAL AGENCY: | | |
|---|---|---|

| NAME (Indicate Mr., Ms., Mrs.)<br>**Britney Grisso-Leahey** | HOME TELEPHONE NUMBER *(Include Area Code)* |
|---|---|

| STREET ADDRESS | CITY, STATE AND ZIP<br>Waterford, NJ 08089 | DATE OF BIRTH |
|---|---|---|

**NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP, COMMITTEE, STATE OF LOCAL GOVERNMENT WHO DISCRIMINATED AGAINST ME (If more than one than list below)**

| NAME<br>**Centers Health Care** | NUMBER OF EMPLOYEES, MEMBERS<br>> 20 | TELEPHONE (Include Area Code)<br>(609) 567-3100 |
|---|---|---|

| STREET ADDRESS<br>43 N. White Horse Pike | CITY, STATE AND ZIP<br>Hammonton NJ 08037 | COUNTY<br>Atlantic |
|---|---|---|

| CAUSE OF DISCRIMINATION *(Check appropriate box(es))*<br>Q Race  Q Color  Q Sex   Q Religion   Q National Origin<br>   X Retaliation   QAge   X Disability  Q Other *(Specify)* | DATE DISCRIMINATION TOOK PLACE |   |
|---|---|---|
| | *Earliest* | *Latest*  05/12/2020 |

**The Particulars Are:**

A.     1.        Relevant Work History

I began working at Respondent on or about December 18, 2018.  I held the position of Hospital Liaison.  I reported to Nicole Montone, Regional Director of Admissions and Marketing.  Montone reported to Steve Carr, Chief Sales Officer.

Respondent notified me on May 11, 2020 that my employment would be terminated effective May 12, 2020.  Respondent terminated my employment within five (5) days of my requesting a reasonable accommodation for my disability.  Respondent retained nondisabled[a] employees who had not sought reasonable accommodations[b] in positions for which I was as, if not more, qualified to perform when I was terminated.  I was the only Hospital Liaison reporting to Montone terminated effective May 12, 2020.

I consistently demonstrated positive performance and dedication to Respondent.  I performed my job duties and responsibilities in a highly competent manner.

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures | NOTARY - (when necessary for State and Local Requirements) |
|---|---|
| | I swear of affirm that I have read the above charge and that it is true to the best of my knowledge information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | |

| Date:  *June 3, 2020*<br>Charging Party (Signature): | SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(Day Month, and year) |
|---|---|

[a] References herein to a person not having a disability are all to the best of my knowledge.
[b] References herein to a person not having sought reasonable accommodations for a disability are all to the best of my knowledge.

EEOC Charge of Discrimination
Page 2 of 3
Initials of Charging Party –

2.    Harm Summary

I have been discriminated against because of my disability (including history of and regarded as)
and retaliated against because of my seeking reasonable accommodations for my disability.
Evidence of the discriminatory and retaliatory conduct to which I have been subjected includes,
but is not limited to, the following:

(a) On December 27, 2019, I received a bonus for exceeding my quota.

(b) On May 6, 2020, in an email from Montone to Hospital Liaison employees, she stated
that Respondent was "going to need []our assistance in the buildings- . . . to assist
with calls."

(c) On May 7, 2020, in an email to Montone, I submitted a doctor's note, requesting to
work from home from May 7, 2020 to May 31, 2020.  My doctor's note stated that I
was "being treated for exacerbation of chronic condition and treatment adjustment."

(d) On May 7, 2020, Montone responded to my above email, stating "Noted- thanks."

(e) I was able to, and did, perform my job duties and responsibilities from home.

(f) On May 11, 2020, in a phone call with Montone and Merrill Egerton, Human
Resources, Respondent terminated my employment, effective May 12, 2020.  The
stated reason was that Respondent needed to hire more essential personnel to be
present in Respondent's building.  I complained that I was terminated because of my
doctor's note.

(g) Respondent terminated my employment because of my disability and/or my seeking
reasonable accommodations for my disability.

(h) Before I informed Respondent of my disability and sought reasonable
accommodations for my disability, I had no indication that my job was in jeopardy.

(i) I had no performance or disciplinary issues throughout my employment.

(j) At the time of my termination, I had doubled my sales quota.

(k) I had no option or opportunity to remain employed with Respondent.

(l) I was the only Hospital Liaison reporting to Montone who was terminated effective
May 12, 2020.

(m) Respondent assigned my job duties and responsibilities to nondisabled employees
and/or employees who had not sought reasonable accommodations for a disability.  I
was as, if not more, qualified to perform my job duties than the nondisabled
employees and/or employees who had not sought reasonable accommodations for a
disability who were assigned my job duties and responsibilities.

(n) Respondent's disability discriminatory and retaliatory conduct toward me has caused
me emotional distress.

**EEOC Charge of Discrimination**
**Page 3 of 3**
**Initials of Charging Party –**

B.    1.    Respondent's Stated Reasons

       (a)    Respondent's stated reason for terminating my employment, that Respondent needed to hire more essential personnel to be present in Respondent's building, is pretext for disability discrimination and/or retaliation for seeking reasonable accommodations for my disability.

       (b)    Respondents offered no explanation for failing to remedy or prevent the disability discrimination and retaliation to which I was subjected.

C.    1.    Statutes and Bases for Allegations

I believe that Respondent has discriminated against me based on my disability (including history of and regarded as) and retaliated against me based on my seeking reasonable accommodations for my disability, in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, et seq. ("ADA"), and the New Jersey Law Against Discrimination, as amended, N.J.S.A. § 10:5-1, *et seq.* ("NJLAD") as set forth herein.

# Exhibit 2

EEOC Form 161 (11/16)                    **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

To:   **Britney Grisso-Leahey**                          From:   **Philadelphia District Office**
                                                                 **801 Market Street**
                                                                 **Suite 1000**
                                                                 **Philadelphia, PA 19107**

|  | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) | |
|---|---|---|
| EEOC Charge No. | EEOC Representative | Telephone No. |
|  | **Shereeda Johnson** | |
| **530-2020-04272** | Investigator | **(267) 589-9707** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

**[X]**   The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

☐   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐   Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_Janie R. Williamson_                                                          December 9, 2020

Enclosures(s)                                    Janie R. Williamson,                            (Date Mailed)
                                                 **District Director**

cc:    **Kenny Rozenberg**                              **Emily Derstine-Friesen**
       **CEO**                                          **CONSOLE LAW**
       **CENTERS HEALTH CARE**                          **1525 Locust Street**
       **4770 White Plains Road**                       **9th Flr**
       **Bronx, NY 10470**                              **Philadelphia, PA 19102**